16751

STATE v. FLOYD
(76 S. E. (2d) 291)

*Messrs. Nash & Wilson,* of Sumter, *for Appellant,*

*Messrs. Frank A. McLeod, Solicitor,* and *George D. Levy,* of Sumter, *for Respondent.*

June 5, 1953.

BAKER, Chief Justice.

At the November (1950) term of the Court of General Sessions for Sumter County, the appellant, Charles W. Floyd, and another boy were tried on an indictment con-

taining two counts, the first charging rape of the prosecutrix, and the second count charging them with assault and battery of a high and aggravated nature on the person of the prosecutrix, all on the same occasion.

The jury found both defendants not guilty of the first count, but guilty on the second count. Appellant, at the time of the alleged offense, was 17 years of age, and the other defendant was 15. The trial Judge sentenced the appellant in the usual form to serve five years, but upon the service of two years, suspended the remainder and placed him on probation. The other defendant, due to his age, was sentenced to the S. C. Industrial School for boys until he reached the age of 21, from which institution he has heretofore been released on parole, so we were informed when this appeal was orally argued. He was represented by another attorney and did not appeal from his conviction and the sentence imposed.

The brief of the appellant alleges that there are three "Questions Involved," but the alleged first issue was not raised in the court below, and therefore not passed upon; nor do appellant's exceptions undertake to raise such issue. It would therefore be improper for this Court to now make any holding thereabout.

As we view this case, it is not necessary that we consume any time in the discussion of the second issue raised by the appellant's exceptions. Upon another trial of the case, this issue will not, in all probability, arise since it can easily be avoided by counsel representing the State.

The third issue, as stated by the appellant reads:

"Was the alleged 'confession' of the defendant obtained, and admitted in evidence in violation of the defendant's constitutional rights?" Article 1, § 17 of the Constitution of this State, and the Fourteenth Amendment of the U. S. Constitution.

■ The issue of whether a defendant's constitutional rights have been transgressed by overzealous officers in the procurement of an alleged "confession," especially when written up by such officer, is quite often a perplexing one to decide, and this is such a case. There can be no definite and fixed rule governing all cases, but each case must be decided depending upon all of the facts and attending circumstances of the particular case being passed upon.

Here we have a boy seventeen years of age who had learned that some officer or officers were in the town of Olanta, in the County of Florence, looking for him. He immediately dressed and was accompanying his informant to Olanta (the officer hereinafter referred to, and around whose conduct in the procurement of an alleged confession from appellant this appeal revolves, *testified* that this informant said they were going to Kingstree) when they met one, C. L. Hobbs, a Lieutenant of the rural police force of Sumter County and some other officer or officers on the dirt road leading from the appellant's home to the highway leading to Olanta, at between 6 and 6:30 o'clock on the morning following the alleged commission of the alleged offense on the night before. Appellant's home is about one and one-half miles from the highway. Recognizing that the car which they met contained officers, the appellant got out of the car in which he was riding and walked over to the car in which Hobbs was riding, and was placed therein and, after he procured for the officers the clothes he was wearing on the night before, was carried to the police station in Olanta. There he was questioned in a room by Hobbs for a considerable time, during which time no person other than one, J. W. Byrd, the then Chief of Police of Olanta was present, and even he was not present at all times during this questioning of appellant by Hobbs. (This is the same Byrd who has since acquired considerable notoriety by reason of his testimony in behalf of the prosecution in the recently tried case where two citizens of Marlboro County were charged with, but acquitted of the atrocious and cowardly murder of the late J. U. (Red) Watts, Jr.)

While the alleged confession, which was in writing, was not procured in Olanta, but later the same day, at around 1 or 1:30 o'clock, in the Sheriff's office at Sumter, it was procured and typed by the same officer, C. L. Hobbs, and we think it best to set out in sequence the facts surrounding the procurement of the confession.

Soon after reaching the police station or headquarters in Olanta, which was in the town hall, Hobbs took this boy (the appellant) in a room and there questioned him for a considerable period of time, but did not write down anything he said because according to Hobbs, he knew appellant was not telling the truth. During Hobbs' questioning he talked in a loud voice, and muffled slaps could be heard on the outside of the building. Hobbs testified that the slaps heard was when he would slap his hands together in questioning the appellant, although there is a complete absence of any testimony in the record that this was his usual manner of questioning an accused. Hobbs had been a law enforcement officer for several years and was familiar with the usual requirements before a confession obtained could be used in a Court of Justice against a defendant. He admitted that in Olanta the appellant, notwithstanding his questioning and whatever his conduct was in questioning the appellant, steadfastly denied that he was guilty of having taken any protested liberties with the prosecutrix. He denied throughout the trial that he slapped the appellant on the leg when he was questioning him in Olanta, and denied until his final cross-examination by appellant's counsel, that he had called this boy a liar several times or cursed at him when he was questioning him in Olanta.

Hobbs testified that before questioning the appellant at Olanta, he told him that death was the penalty for the crime with which he was charged, and warned him that any statement he (the appellant) made could be used against him, and that he didn't have to make a statement if he didn't want to do so; that he was entitled to the benefit of having an attorney advise him, if he so desired, and that no promises

of any nature were made to him. Hobbs admitted that he did not offer to get any member of appellant's family or family connection, or a friend, to confer with him, or that he would permit him to have any conference with a member of his family or a friend.

When Hobbs was unable to get any incriminating statement from the appellant, he then carried him on to Kingstree where he and the other officer riding with him took charge of the co-defendant of this defendant hereinbefore referred to, and who had been arrested by and was being held for him by the Sheriff of Williamsburg County.

We deem it well to here let it be recorded that there was a third young man, whose home was in or near Olanta, who was also arrested in connection with the offenses charged in the indictment, but while his name appeared as a defendant in the warrant that was issued on the day after these arrests were made, he was not included in the indictment. However, he was arrested at Olanta on the same morning as was the appellant, and these Sumter officers also carried this third boy with them on to Kingstree, and from there all three were brought to Sumter.

Practically about the only time Hobbs was not questioning the appellant was when he was being driven from Olanta to Kingstree, while all of them were getting a quick breakfast in Kingstree, and while being driven from Kingstree to Sumter. It was at least 1:30 o'clock that day before Hobbs succeeded in getting the appellant to sign the alleged confession which Hobbs typed.

Hobbs testified that before he procured the signed confession made in Sumter he again advised the appellant that he didn't have to make a statement; that he was entitled to have the benefit of a lawyer to advise him; that no promises of any kind were made to him, and that his statement would be used against him. He did not, however, offer to get any member of appellant's family, or even a friend to

advise with him, or tell him he could see any member of his family, or a friend.

The inquisition held at Sumter was apparently conducted on a somewhat higher plane than the one at Olanta, although at Sumter there were four or five officers in and out of the office where Hobbs was questioning the appellant, all of them except the Sheriff being armed. It was in this office that Hobbs typed the "confession" signed by appellant. Hobbs testified on cross-examination that in writing the "confession" of the appellant, when the appellant said something he "knew wasn't so," he would stop him and try to get him straightened out, and then he would write down what the appellant said, the natural inference to be drawn therefrom being that appellant changed his statement to meet the approval of the officer.

At the time the confession was admitted in evidence over the strenuous objection of appellant's counsel, Hobbs had categorically denied any misconduct on his part as an officer of the law, in the questioning of the appellant at Olanta, other than slapping his hands together, although he had been diligently cross-examined thereabout. But when he was later cross-examined, he then admitted that he probably was talking in a loud voice, and slapping his hands together; that he might have called the appellant a liar several times; that he might have cursed several times, but wouldn't say he did or didn't; all of which was contradictory of his testimony when first cross-examined thereabout, except as to slapping his hands together. Hobbs continued however to deny having slapped appellant on his legs, as was thereafter testified to by appellant, which has circumstantial corroboration from other witnesses. It has not gone unnoticed that Hobbs, in his testimony, strategically placed himself as sitting on the opposite side of a table from where the appellant was sitting in the room at Olanta where he could not have been slapping him on the leg when he was questioning the appellant, although there is no corroboration of this by the witness Byrd, the only witness who could have corroborated

Hobbs' statement thereabout, and who testified for the prosecution as a reply witness.

We are not including herein the testimony of the appellant and his witnesses as to the cursing of the appellant and other misconduct by Hobbs in the room at Olanta, since our inquiry is limited to undisputed testimony as to whether the alleged confession was freely and voluntarily made without any kind or degree of violence, abuse, threat, or menacing influence by an officer of the law, when questioning this 17 year old boy.

In fairness to the trial Judge, it should be stated that at the time he admitted this alleged confession, the officer Hobbs had not made the admissions later drawn from him upon further cross-examination, as hereinabove related, and that thereafter no motion was again made to strike out the alleged confession. However, there appears to be no doubt that everyone connected with the trial of this case knew that at all times the appellant was objecting to and protesting against the admission in evidence of same. And it may be stated that the "confession" as prepared by officer Hobbs, and signed by the appellant, was most damaging.

As hereinbefore stated, this issue is quite often a most perplexing one, and the more so in that it is dependent upon the facts and surrounding circumstances of each particular case. We have put considerable thought on this case, and have reached the conclusion that considering the admissions finally made by officer Hobbs, the alleged confession of the appellant should not have been allowed to remain in evidence against him, even though the learned trial Judge submitted to the jury the issue whether it was freely and voluntarily made. It may be that the jury reached the conclusion that it was not made freely and voluntarily, yet having found the appellant guilty on the second count, we are constrained to conclude that it must have influenced the jury in their verdict.

Here we have a boy 17 years old, charged with a ■ crime, the punishment for which could be death by electrocution, being questioned by armed officers of the law, but in the main by one particular officer who finally typed a statement which he prepared for the appellant's signature, at intervals from 6:30 A. M. to 1:30 P. M., and who was at least called a liar several times by the officer, and with this officer cursing, talking in a loud voice, and slapping his hands together in an excitable manner soon after the appellant was arrested, and without the appellant having had the opportunity of conferring with a friend or any member of his family. In the space of time indicated hereinabove a most damaging statement is signed, and one contrary to the testimony of the appellant upon his trial.

Upon a careful analysis of the testimony in reference to the procurement of this confession, we cannot erase from our minds the probability that this boy was overawed by the treatment he received at Olanta by officer Hobbs, and by being surrounded by armed officers in Sumter, and therefore signed what he knew would satisfy Hobbs. The trial Judge had no precedent of a decided case of closely similar facts to govern him, and had to make a "snap judgment" decision, whereas we have been able to give the issue mature thought; and upon doing so, we have reached the conclusion that this alleged confession was so tainted, it should have been excluded.

The exception raising this issue is sustained, and the judgment and sentence imposed is reversed, and the case remanded for a new trial.

FISHBURNE, STUKES, TAYLOR and OXNER, JJ., concur.